**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MAZDA MOTOR OF AMERICA, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-05-648 |
| COLLEGE PARK MOTOR CARS, INC. | * | |
| Defendant. | * | |

\*\*\*\*\*

## MEMORANDUM OPINION

The deterioration of the relationship between Plaintiff Mazda Motor of America ("Mazda" or "Plaintiff") and one of its authorized dealers, College Park Motor Cars, Inc. ("College Park Mazda" or "Defendant") gives rise to this action. With this suit, Mazda seeks to permanently end this relationship and terminate its dealer agreement with College Park Mazda. Currently pending before the Court are Plaintiff's Motion for Summary Judgment [26], Plaintiff's Motion to Strike Defendant's Corrections to Deposition Testimony [36] and Plaintiff's Motion to Strike Defendant's Expert Report [37]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, this Court will grant the Motion for Summary Judgment and the Motion to Strike Defendant's Expert Report, but deny Plaintiff's Motion to Strike Defendant's Corrections to Deposition Testimony .

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court views the following facts in the light favorable to the non-movant. On January 1, 2003, Plaintiff and Defendant entered into a written Mazda North America Authorized Dealer Agreement (the "Mazda Dealer Agreement") for a period of one year. Under this agreement, Mazda

gave College Park Mazda certain non-exclusive rights to purchase and resell Mazda automobiles and other products, as well as to use "Mazda Marks" in connection with the sale and services of Mazda products.

Near the end of the one-year term, Mazda sent College Park Mazda notice that it did not intend to renew the dealer's Mazda Dealer Agreement for various reasons. College Park Mazda promptly objected to the non-renewal, and the parties negotiated a settlement, memorializing this agreement in document dated August 17, 2004 (herein referred to as the "Settlement Agreement"). Pursuant to the Settlement Agreement, College Park Mazda agreed to "sell no fewer than 360 New Mazda Vehicles" to retail customers for the period starting on January 1, 2004 and ending on December 31, 2004 (Compl. ¶ 10). In turn, the Settlement Agreement defines a "New Mazda Vehicle" as:

> a new, untitled Mazda vehicle sold to a retail customer, and specifically excluding: Mazda dealership demos, Mazda service and body shop rentals, and Mazda-initiated fleet sales (defined as sales through Mazda's fleet program where Mazda first contacts the fleet customer and Dealer acts as an accommodator that earns some profit from Mazda's efforts).

In exchange for College Park Mazda's performance of these conditions in the Settlement Agreement, Mazda agreed renew the Mazda Dealer Agreement through December 31, 2005.

According to both parties' accounts, College Park Mazda sold more than 360 Mazda vehicles. Whether all of these automobiles were "New Mazda Vehicles" within the meaning of the Settlement Agreement, however, lies at the heart of this dispute. College Park Mazda sold 287 Mazda vehicles to Enterprise Rent-A-Car, Inc. ("Enterprise") and 285[1] vehicles to other customers.

---

[1] Though College Park Mazda's records reflect that the dealership sold 285 vehicles to retail customers, Mazda has suggested that this number may include 49 duplicate entries and

2

On January 26, 2005, Mazda sent notice to College Park Mazda that it was terminating the Mazda Dealer Agreement because it appeared that College Park Mazda had breached the Settlement Agreement.

Seeking adjudication of rights under the Settlement Agreement, Mazda filed this action on March 7, 2005. The Complaint alleges breach of contract and seeks declaratory judgment and specific performance of the Settlement Agreement.

## **DISCUSSION**

Because the resolution of the Motion to Strike Corrections to Deposition Testimony directly affects the evidence upon which Defendant may rely to avert summary judgment, this Court will first consider Plaintiff's Motion to Strike Defendant's Corrections to Deposition Testimony.

I.      <u>Plaintiff's Motion to Strike Defendant's Corrections to Deposition Testimony</u>

Plaintiff requests that this Court strike the errata sheets to the deposition of Tamara Darvish ("Darvish"), Defendant's corporate designee, arguing that these corrections do not clarify Darvish's answers, but instead change the substance of her testimony.

Rule 30(e) of the Federal Rules of Civil Procedure sets forth the standard for correcting deposition testimony and provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in

---

that, correcting these entries, College Park Mazda sold only 236 vehicles to costumers other than Enterprise.

>the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

Fed. R. Civ. P. 30(e). As several courts have noted the language in the rule is generally permissive, implying that a deponent may make any change so long as she supplies a reason within 30 days of receiving notice of the availability of the deposition transcript. *See, e.g.*, *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (noting that Rule 30(e) does not require a judge to examine "the sufficiency, reasonableness, or legitimacy of the reasons for the changes") (internal quotations omitted); *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1406 (N.D. Ill. 1993) (explaining that a witness can make changes that contradict the original answers in his deposition); *Holland v. Cedar Creek Mining, Inc.* 198 F.R.D. 651, 653 (S.D. W. Va. 2001) (construing Rule 30(e) broadly); *United States ex. rel Barbara Burch v. Piqua Engineering,* 152 F.R.D. 565, 566-67 (S.D. Ohio 1993) (holding that under the rule "changed deposition answers of any sort are permissible, even those which are contradictory or unconvincing, as long as the procedural requirements set forth in the Rule are also followed");

Courts adopting this reasoning, however, have also taken the position that, on a motion for summary judgment or at trial, the opposing party may admit both the original and corrected deposition to impeach the witness with her contradictory answers. *See Foutz v. Town of Vinton*, 211 F.R.D. 293, 295 (W.D. Va. 2002); *see also Podell*, 112 F.3d at 103 (2d Cir. 1997) ("Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made. . . because [a]ny out-of-court statement by a party is an admission, a deponent's original answer should [be] admitted [into evidence] even when he amends his deposition testimony -- with the deponent [o]f course free to introduce the amended answer and explain the reasons for the

change.") (quoting *Usiak v. New York Tank Barge Co.,* 299 F.2d 808 (2d Cir. 1962)) (internal quotation marks omitted).

Yet, a growing body of caselaw holds that a deponent cannot make changes to a deposition unless the alteration is to correct a clerical or transcription error. *See, e.g.*, *SEC v. Parkersburg Wireless, L.L.C.,* 156 F.R.D. 529, 535 (D.D.C. 1994) (noting the trend in which courts do not allow a party to make any substantive changes in deposition testimony for any reason); *Rios v. Bigler,* 847 F. Supp. 1538, 1556 (D. Kan.1994) (explaining that courts should consider only those changes that clarify the deposition, and not those which materially alter it); *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (stating that Rule 30(e) does not allow a witness to alter what was said under oath); *see also Eckert v. Kemper Fin. Servs., Inc.*, 1998 WL 699656, at *6 (N.D. Ill. 1998) (refusing to allow plaintiff to use corrections to create a "sham issue of fact").

Although the Fourth Circuit has not offered definitive guidance on this issue, it appears clear that, at the very least, a party may not use Rule 30(e) to avoid summary judgment by changing damaging testimony. Plaintiff relied on Darvish's testimony in its original motion for summary judgment, filed on September 19, 2005. Just two days after Plaintiff filed for summary judgment, Defendant produced an Errata sheet with corrections to Darvish's deposition testimony. This Errata sheet "corrected" portions of Darvish's deposition as follows:

| Question | Deposition Response | Errata Correction | Reason Stated |
|---|---|---|---|
| So those would be–what do you mean by retail? | One customer buying one car. | An end user of a vehicle, which would include not only an individual purchaser, but also a company or business, purchasing one or more vehicles for end use and not for resale. | First answer was not a complete answer. |
| An individual customer? | Uh-hum. | An individual consumer or a company or business. | Not a complete answer. |
| Yes? | Yes, sorry. | An individual consumer or a company or business. | Not a complete answer. |
| Now, a retail customer I believe you testified is an individual consumer who comes in and buys a single vehicle; is that true? | Uh-hum. | No. A retail customer is an end user of a vehicle , which would include not only an individual purchaser, but also, a company or business, purchasing one or more vehicles for end use and not for resale. | Not a complete answer. |
| Yes? | Yes. | No. | Not a complete answer. |

After examining the plain language of the Rule and the case law construing this provision, the Court is not persuaded that Rule 30(e) permits this Court to strike this testimony its entirety. Nevertheless, Rule 30(e) does not prevent a court from comparing the original and corrected versions of the testimony for the purposes of determining whether a party has demonstrated the existence of a genuine issue of material fact. Consequently, although this Court will allow Defendant's changes to the deposition testimony, it will also consider the original version of the deposition in deciding the motion for summary judgment.

II.   Plaintiff's Motion for Summary Judgment

A.   Standard of Review

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

B.  The Settlement Agreement

Mazda urges this Court to grant summary judgment on its claim for breach of contract. Specifically, Mazda contends that College Park Mazda did not sell 360 "New Mazda Vehicles" in 2004, thus breaching the Settlement Agreement. In response, College Park Mazda maintains that it sold at least 360 "New Mazda Vehicles."

The Settlement Agreement is governed by California law,[2] and under California law, as under Maryland law, the interpretation of a contract ordinarily rests within the province of the court. *See Parsons v. Bristol Development Co.*, 402. P.2d 839, 843 (Cal. 1965); *see also Lema v. Bank of America*, 826 A.2d 504, 513 (Md. 2003). With issues of contract interpretation, a court must begin with the language of the contract. However, where the meaning attributable to the words used in a contract appears ambiguous, "the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 655 (Cal. Ct. App. 2004) ; *see also Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 442 P.2d 641 (Cal. 1968).

The Settlement Agreement states that the term "New Mazda Vehicle" means:

> a new, untitled Mazda vehicle sold to a retail customer, and specifically excluding: Mazda dealership demos, Mazda service and body shop rentals, and Mazda-initiated fleet sales (defined as sales through Mazda's fleet program where Mazda first contacts the fleet customer and Dealer acts as an accommodator that earns some profit from Mazda's efforts).

Within this definition, the parties dispute the meaning of the terms "retail customer" and "Mazda-

---

[2] The parties do not dispute that, pursuant to a choice of law provision in the Settlement Agreement, California law governs the interpretation of the Settlement Agreement.

initiated fleet sales." Mazda contends that the sales to Enterprise do not count as part of the 360 "New Mazda Vehicles" that College Park Mazda was required to sell to maintain its status as a Mazda authorized dealer because Enterprise is not a retail customer and because these sales were "Mazda-initiated fleet sales." On the other hand, College Park Mazda argues that these sales are within the Settlement Agreement's definition of "New Mazda Vehicles" because it, rather than Mazda, initiated the sales to Enterprise. In addition, College Park Mazda claims that it understood the term retail customer to include Enterprise.

Even assuming that the term "retail customer" is ambiguous,[3] this Court finds that parties did not intend for the sales to Enterprise to qualify as sales of new Mazda vehicles. During her deposition, Darvish, a corporate officer of College Park Mazda, explicitly conceded that College Park Mazda did not consider Enterprise a retail customer. In the deposition, she described a retail customer as "one customer buying a car." Then, when asked about other types of customers, Darvish named Enterprise. Darvish contrasted "retail customers" with companies, such as Enterprise, that College Park Mazda understood were *not* retail customers. As Defendant's corporate designee has stated under oath that Enterprise was not a retail customer, Plaintiff is entitled to summary judgment.

Furthermore, even Plaintiff's corrections to Darvish's testimony cannot establish that a genuine issue of material fact exists as to the breach of contract claim. A plaintiff cannot simply correct a deposition in order create a disputed fact issue, and the case of *Barwick v. Celotex Corp*., 736 F.2d 946 (4th Cir. 1994) aptly illustrates this rule. In *Barwick*, the plaintiff submitted an

---

[3] Black's Law Dictionary defines "retail" as the "sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or process." Black's Law Dictionary 1317 (7th ed. 1999).

9

affidavit, in which he contradicted his deposition testimony, in response to the defendants' motion for summary judgment. The Fourth Circuit affirmed the district court's decision not to credit the affidavit testimony, explaining, "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 960 (quoting *Perma Research and Development Co. v. Singer*, 410 F.2d 572, 578 (2d Cir. 1978)). This reasoning applies with equal force in this context. If parties could avert summary judgment by correcting sworn testimony for any reason, this practice would vitiate the effectiveness of summary judgment as means to secure speedy and inexpensive determination of an action. *Cf. Celotex Corp. v. Catrett*, 477 U.S. at 327.

Nor does the expert testimony proffered by Defendant alter this conclusion. As a general rule, a court may admit expert testimony if the witness's specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Yet, courts have also recognized that, in most cases, expert testimony is not necessary to expound on words used in a contract. *See, e.g., United States v. Race*, 632 F.2d 1114, 1119-20 (4th Cir. 1980) ("We attach no weight to Commander Dolinas expert testimony on the interpretation of this clause. The clause includes no words of art, but only words of common understanding and use, requiring no special expertise for their interpretation. Expert testimony on the meaning of such language is both superfluous and improper.") (citing *Marx & Co., Inc. v. Diner's Club*, *Inc.*, 550 F.2d 505 512 (2d Cir. 1977); *see also Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (holding that expert testimony interpreting a contract is improper). To the extent that Dr. Manuel's report offers an interpretation of the contract, this Court finds that this testimony is both unnecessary and improper.

Although Defendant claims that the Settlement Agreement does not contain "common words," this Court remains unconvinced that terms such as "retail" and "Mazda-initiated fleet sales" properly constitute terms of art. While it is true, that these terms are regularly used in the automobile industry, these words have common legal meanings, such that this Court may interpret these words without the assistance of Dr. Manuel's expert advice.

Therefore, having held that parties understood that the sales of "New Mazda Vehicles" would exclude sales to Enterprise, this Court will grant Plaintiff's Motion for Summary Judgment.

## **CONCLUSION**

For the aforementioned reasons, this Court will grant Plaintiff's Motion to Strike Dr. Manuel's Report and will also grant Plaintiff's Motion for Summary Judgment on the breach of contract claim, but will deny Plaintiff's Motion to Strike Corrections to Deposition Testimony. An Order consistent with this Opinion will follow.

Date:   February 13, 2006                                /s/
                                             Alexander Williams, Jr.
                                             United States District Court